Elizabeth **DALEY**, M.D., Plaintiff,

v.

Caspar W. **WEINBERGER**, Secretary of Health, Education and Welfare, et al., Defendants.

No. 75 C 306.

United States District Court, E. D. New York.

Oct. 3, 1975.

Rothblatt, Rothblatt, Seijas & Peskin, by Henry B. Rothblatt, Jon G. Rothblatt, New York City, for plaintiff.

David G. Trager, U. S. Atty. E.D.N. Y., by Cyril Hyman, Asst. U. S. Atty., Brooklyn, N.Y., for defendants.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiff Elizabeth Daley, a licensed physician practicing in New York City, brought this action under 28 U.S.C. §§ 1331 and 1337 seeking declaratory and injunctive relief aimed at preventing defendants (hereinafter "FDA") from any further attempts to conduct an inspection of her office. The case is now before the court on FDA's motion to dismiss the complaint or in the alternative for summary judgment. Rules 12(b)(6) and 56, F.R.Civ.P.

In the course of plaintiff's practice it appears that she prescribes various drugs, including prednisone, testosterone, estradiol and combinations thereof, for patients suffering from rheumatic diseases, principally rheumatoid arthritis. She alleges that on or about February 10, 1975, defendant Allen R. Halper, an FDA investigator, visited her office in New York City, interrogated a registered nurse in her employ and served a Notice of Inspection pursuant to Section 704(a) of the Food, Drug and Cosmetic Act, 21 U.S.C. § 374(a) ("the Act").[1]

---

1. "§ 374. Inspection—Right of agents to enter; scope of inspection; notice; promptness; exclusions

"(a) For purposes of enforcement of this chapter, officers or employees duly designated by the Secretary, upon presenting appropriate credentials and a written notice to the owner, operator, or agent in charge, are authorized (1) to enter, at reasonable times, any . . . establishment in which . . . drugs . . . are manufactured, processed, packed, or held, for introduction into interstate commerce . . . and (2) to inspect, at reasonable times and within reasonable limits and in a reasonable manner, such . . . establishment . . . and all pertinent equipment, finished and unfinished materials; containers, and labeling therein. In the case of any . . . establishment . . . in which prescription drugs are manufactured, processed, packed, or held, the inspection shall extend to all things therein (including records, files, papers, processes, controls, and facilities)

On or about February 27, 1975, two other FDA investigators, defendants John E. Klemmer and Thomas D. Gardine, appeared at plaintiff's office, interrogated the registered nurse and served a second Notice of Inspection.

Plaintiff believes that she is being investigated concerning a drug called Liefcort. Although she claims that FDA lacks jurisdiction under the Act[2] to investigate or inspect either her practice or the treatment she prescribes for her patients, she asserts her willingness to discuss with FDA officials, through her attorney, details of medications which she prepares, prescribes and administers to her patients.

FDA acknowledges that its desire to inspect plaintiff's premises stems from a belief that in the course of plaintiff's practice she may be distributing Liefcort, a drug not approved by FDA. Liefcort, which is apparently used outside this country in the treatment of arthritis, is believed to consist of prednisone, testosterone and estradiol, in proportions known only to its discoverer, the late Dr. Robert Liefmann. FDA believes that some of it may have been shipped into the country and found its way into plaintiff's offices.

Essentially four grounds are relied on in support of FDA's motion to dismiss or for summary judgment: (1) there is no justiciable controversy before the court; (2) FDA, an agency of the United States, has not consented to the suit and therefore it is barred by the doctrine of sovereign immunity; (3) there is an adequate remedy at law; and (4)

FDA does have the statutory authority to investigate plaintiff's offices.

■ The absence of a justiciable controversy is premised on a lack of ripeness, a question necessarily involving a discretionary determination as to whether a particular controversy is appropriate for judicial resolution. In situations, such as this, where a pre-enforcement attack is made on the validity of administrative action, the Court, in the drug trilogy cases *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967); *Gardner v. Toilet Goods Ass'n*, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967), has established guidelines for ascertaining the appropriateness of judicial intervention.

The test to be applied is twofold in nature and involves an evaluation of "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott, supra*, 387 U.S. at 149, 87 S.Ct. at 1515. The first part of the test, *i. e.*, the fitness of the issues for resolution, itself consists of two parts— whether the issues raised were purely legal in nature and whether the challenged agency action was final. *Id.*

In *Abbott, supra,* the plaintiffs had challenged the authority of the Secretary of Health, Education and Welfare to promulgate certain regulations, which had already been the subject of hearings and had been published in final form with immediate compliance expected. Applying the two-part test, the Court

---

bearing on whether prescription drugs which are adulterated or misbranded within the meaning of this chapter, or which may not be manufactured, introduced into interstate commerce, or sold, or offered for sale by reason of any provision of this chapter, have been or are being manufactured, processed, packed, transported, or held in any such place, or otherwise bearing on violation of this chapter. . . . The provisions of the second sentence of this subsection shall not apply to—

    \*       \*      \*      \*      \*

"(2) practitioners licensed by law to prescribe or administer drugs and who manufacture, prepare, propagate, compound, or process drugs solely for use in the course of their professional practice . . . .."

2. Plaintiff also claims that FDA's construction of § 374 violates the Fourth Amendment under the reasoning of *Colonnade Catering Corporation v. United States*, 397 U. S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970), and *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972).

noted that the tendered issues were purely legal and the agency action was in every respect final, not tentative, and not the action of a subordinate official. *Abbott Laboratories, supra,* 387 U.S. at 151, 87 S.Ct. 1507. Additionally, the challenged regulations would have "a direct effect on the day-to-day business of all prescription drug companies . . ." (387 U.S. at 152, 87 S.Ct. at 1517), and therefore withholding judicial consideration would necessitate considerable hardship. Under those circumstances, the Court departed from the otherwise settled rule that courts are to avoid "entangling themselves in abstract disagreements over administrative policies" and that administrative agencies are entitled to be free "from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories, supra,* 387 U.S. at 148–49, 87 S.Ct. at 1515.

■■ In this case, the only action taken by FDA has been to cause two notices of inspection to be served and to question plaintiff's nurse. The notices merely recite various statutory provisions authorizing FDA inspections without specifying the purpose of the inspection or what FDA expects to find on the premises it seeks to enter.[3]

Applying the *Abbott Laboratories* test to these facts, the court is of opinion that discretion should not be exercised in favor of retaining jurisdiction. While the issue raised appears to be a purely legal one, *i. e.,* the FDA's statutory authority to inspect a physician's office, there is here no final agency action whose legality the court may pass upon. Although FDA agents made two visits to plaintiff's office, no inspection was in fact conducted. The court is reluctant to anticipate what future action, if any, FDA may decide to take.

In *American Dietaids Co., Inc. v. Celebrezze,* 317 F.2d 658 (2 Cir. 1963), the court affirmed the dismissal of an action brought to enjoin FDA inspectors from using concealed tape recorders during future inspections of a plaintiff's premises, saying:

> "There is no ground in such a single past incident for declaratory relief against possible future inspections. There is no actual controversy now existing on which to found declaratory relief. . . . 'Especially where governmental action is involved, courts should not intervene unless the need for equitable relief is clear, not remote or speculative.' [Quoting from *Eccles v. People's Bank of Lakewood Village, Cal.,* 333 U.S. 426, 431, 68 S.Ct. 641, 644, 92 L.Ed. 784.]" 317 F.2d at 660.

That language is apposite here.

This case is also distinguishable from *Abbott* and *Gardner* on the question of the hardship of withholding judicial consideration at this time. In those cases the challenged regulations required the plaintiffs to take positive action which would have had "a direct effect on the[ir] day-to-day business . . . ." Here, no action on plaintiff's part is required—the ball, so to speak, is in FDA's court.

If FDA decides to pursue the matter further, there are two courses of action available. First, if FDA desires to enforce its claimed right of inspection under § 374, it will have to seek the court's aid under § 332, which grants the district courts jurisdiction to enjoin violations of § 331. Subdivision (f) of § 331 prohibits "[t]he refusal to permit entry or inspection as authorized by section 374 . . . ." If relief were granted under § 332 the occupant (plaintiff here) would be enjoined from refusing entry to FDA inspectors. *Cf. Brennan v. Buckeye Industries, Inc.,* 374 F.Supp. 1350 (S.D.Ga.1974). In such a proceeding plaintiff would have the opportunity to explain to the court her reasons for

---

3. Nor is FDA required under § 374 to set forth in its notice the reason underlying the inspection or what it expects to find; the section simply and unequivocally authorizes FDA to enter and inspect certain specified premises at reasonable times. See fn. 1.

denying entry to the FDA inspectors and the legal issue raised could then be properly decided. See, *e. g., FTC v. Simeon Management Corporation,* 391 F. Supp. 697 (N.D.Cal.1975).

Second, FDA could institute criminal proceedings against plaintiff under 21 U.S.C. § 333(a),[4] in which event she could raise as a defense FDA's lack of authority to inspect her office. See, *e. g., United States v. Thriftimart, Inc.,* 429 F.2d 1006 (9 Cir.), *cert. denied,* 400 U.S. 926, 91 S.Ct. 188, 27 L.Ed.2d 185 (1970).

Plaintiff urges that she should not be required to test the legality of FDA's right to inspect her office in a criminal proceeding, on pain of conviction should she lose. Her fear of prosecution, however, is not a sufficient predicate for this court to retain jurisdiction. Here, there is no indication that the government intends to prosecute plaintiff either for her past two refusals to permit entry or for any future refusals—unlike the situation in *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), where physicians challenged the constitutionality of a Georgia abortion statute under whose predecessors doctors were actually prosecuted. *Cf. Laird v. Tatum,* 408 U.S. 1, 13, 92 S.Ct. 2318, 2325, 33 L.Ed.2d 154 (1972),[5] and *Socialist*

*Workers Party v. Attorney General of the United States,* 510 F.2d 253 (2 Cir. 1974).

■ Moreover, absent compelling circumstances, such as presented in the *Doe* case, there is no basis for a court to issue a judgment declaring in advance of a criminal prosecution that acts already committed, or even to be committed in the future, are or are not unlawful. *Cf. Ewing v. Mytinger & Casselberry,* 339 U.S. 594, 599, 70 S.Ct. 870, 94 L.Ed. 1088 (1950).

Finally, in construing statutes providing criminal penalties for individuals who refuse to honor administrative summonses, the courts have held in parallel situations that good faith noncompliance is not subject to prosecution. See *Reisman v. Caplin,* 375 U.S. 440, 446–49, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964) (good faith refusal to honor an internal revenue service summons would be a defense to a prosecution under 26 U.S.C. § 7210).[6] Similarly, in *Anheuser-Busch, Inc. v. Federal Trade Commission,* 359 F.2d 487 (8 Cir. 1966) (Blackmun, J.), the court held that § 10 of the Federal Trade Commission Act, 15 U.S.C. § 50, which makes it an offense to refuse "to answer any lawful inquiry . . . if in [one's] power to do so, in obedience to the subpoena or lawful requirement

---

4. Section 333(a) provides:
   "Any person who violates a provision of section 331 of this title shall be imprisoned for not more than one year or fined not more than $1,000, or both."

5. In refusing to permit a suit under the First Amendment seeking declaratory and injunctive relief against surveillance being conducted by the Army, the Court noted:
   "At the same time, however, these decisions have in no way eroded the 'established principle that to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained, or is immediately in danger of sustaining, a direct injury as the result of that action . . . .' *Ex parte Levitt,* 302 U.S. 633, 634, 58 S.Ct. 1, 82 L.Ed. 493 (1937)."
   The Court went on to conclude that to allow the action to proceed

"would have the federal courts as virtually continuing monitors of the wisdom and soundness of Executive action; such a role is appropriate for the Congress acting through its committees and the 'power of the purse'; it is not the role of the judiciary, absent actual present or immediately threatened injury resulting from unlawful governmental action." 408 U.S. at 15, 92 S.Ct. at 2326.

6. Section 7210 provides:
   "Any person who, being duly summoned to appear to testify, or to appear and produce books, accounts, records, memoranda, or other papers . . . neglects to appear or to produce such books, accounts, records, memoranda, or other papers, shall, upon conviction thereof, be fined not more than $1,000, or imprisoned not more than 1 year, or both, together with costs of prosecution."

of the commission . . . ", does not authorize criminal prosecution "where the challenge to the subpoena is in good faith." 359 F.2d at 490. See also *Federal Power Commission v. Metropolitan Edison Co.,* 304 U.S. 375, 386–87, 58 S. Ct. 963, 82 L.Ed. 1408 (1938).

The court concludes that a controversy sufficiently ripe for adjudication does not presently exist between the parties. Defendants' motion for summary judgment dismissing the complaint is therefore granted.[7]

So ordered.

---

7. Accordingly, it is not necessary for the court either to wade through the murky waters of sovereign immunity or to decide whether the *Reisman, supra,* and *Anheuser-Busch, supra,* cases mandate a dismissal of the action for want of equity.