**Elizabeth DALEY, M. D., Plaintiff-Appellant,**

v.

**F. David MATHEWS, Secretary of Health, Education and Welfare, et al., Defendants-Appellees.**

**No. 878, Docket 75–6109.**

United States Court of Appeals, Second Circuit.

Argued April 22, 1976.

Decided May 27, 1976.

Henry B. Rothblatt, New York City (Jon G. Rothblatt and Rothblatt, Rothblatt, Seijas & Peskin, New York City, on the brief), for plaintiff-appellant.

Cyril Hyman, Asst. U. S. Atty., Brooklyn, N. Y. (David G. Trager, U. S. Atty., E. D. N. Y., Paul B. Bergman, Asst. U. S. Atty., Brooklyn, N. Y., Richard A. Merrill, Chief Counsel, and Forrest T. Patterson, Associate Chief Counsel, for Enforcement, United States Food and Drug Administration, Rockville, Md., on the brief), for defendants-appellees.

Before MEDINA, FEINBERG and GURFEIN, Circuit Judges.

MEDINA, Circuit Judge:

Following two attempts by inspectors of the Food and Drug Administration ("FDA") to enter and inspect her medical offices, appellant Elizabeth Daley, M. D., commenced this action under 28 U.S.C. Section 1331 and Section 1337 seeking a declaratory judgment that the FDA lacks jurisdiction to inspect her offices pursuant to the provisions of the Food, Drug, and Cosmetic Act, 21 U.S.C. Sections 301 *et seq.,* and seeking an injunction against any future inspection. The District Court, Judge Neaher, Eastern District of New York, granted defendants' motion for summary judgment and dismissed the complaint on the ground that a controversy sufficiently ripe for adjudication does not presently exist between the parties. 400 F.Supp. 1288 (E.D.N.Y.1975).

## I

Dr. Daley is a physician who specializes in the treatment of arthritis, a disease from which she herself suffers. As part of the therapy which she administers to her patients, Dr. Daley uses three drugs, prednisone, testesterone, and estradiol, in combination. The FDA contends that one of the compounds of these drugs, Liefcort, is unapproved and dangerous, and that appellant uses and dispenses this illegal compound. Dr. Daley counters that the three drugs which form the Liefcort compound are federally approved, and that in any case, the FDA lacks authority to inspect her office under Section 704(a) of the Food, Drug and Cosmetic Act, 21 U.S.C. Section 374(a)[1] as that Section exempts physicians

---

1. § 374. Inspection—Right of agents to enter; scope of inspection; notice; promptness; exclusions

(a) For purposes of enforcement of this chapter, officers or employees duly designated by the Secretary, upon presenting appropriate credentials and a written notice to the owner,

licensed by law to prescribe or administer drugs.

On February 10, 1975, an FDA inspector attempted to gain entry into appellant's offices in order to carry out an inspection. After he presented a notice of inspection, a nurse then on duty stated that appellant was not in and refused to permit the inspection. She advised the investigator that any inquiries regarding Dr. Daley should be directed to the latter's attorneys. Several weeks later, appellant's attorney contacted Officer Musson of the FDA, informing him that Dr. Daley would not permit an inspection of her offices but would provide any information the FDA requested concerning medications used in her practice.

On February 27, 1975, another inspection was attempted by two other investigators on a day that Dr. Daley maintained office hours. Finding the office door locked, they rang the bell and were met by the nurse who once again refused to permit entry. After being given another notice of inspection, the nurse advised the investigators that Dr. Daley was not in the office that day and repeated that they should contact the Doctor's attorneys. No further inspections were attempted.

## II

Even though the FDA still maintains that Dr. Daley is continuing her illegal use of Liefcort, there is no showing of any intention or threat again to inspect the Doctor's office in search of the drug. Notwithstanding this uncertainty, Dr. Daley nonetheless contends that there now exists an actual controversy between the parties and that she has already suffered and continues to suffer substantial injury to such an extent that immediate relief is necessary. She claims that continued investigation by appellees will destroy her professional reputation and drive away patients, and that the FDA's actions represent an unwarranted and unlawful intrusion on her right to practice medicine in accordance with her own professional judgment and skill.

Despite such anxiety which Dr. Daley may have suffered as a result of the FDA's indecisive behavior, we are constrained to agree with the court below that there does not yet exist a ripe case or controversy on which to found declaratory or injunctive relief. All that the FDA has done was to appear on two occasions and request permission to inspect the physician's offices. It is not even clear that the Doctor herself refused to allow the inspections. Following the two visits by FDA investigators, Dr. Daley proposed that an inspection be arranged in the presence of her attorney, but this suggestion was rejected by the FDA for the understandable reason that to follow such a course would eliminate the element of surprise and perhaps frustrate the purpose of the inspection. The FDA has declined to take any affirmative action which could ripen the controversy for judicial review. It is thus impossible to predict whether the agency will attempt another inspection, whether it will seek to obtain an

operator, or agent in charge, are authorized (1) to enter, at reasonable times, any * * * establishment in which * * * drugs * * * are manufactured, processed, packed, or held, for introduction into interstate commerce * * * and (2) to inspect, at reasonable times and within reasonable limits and in a reasonable manner, such * * * establishment * * * and all pertinent equipment, finished and unfinished materials; containers, and labeling therein. In the case of any * * * establishment * * * in which prescription drugs are manufactured, processed, packed, or held, the inspection shall extend to all things therein (including records, files, papers, processes, controls, and facilities) bearing on whether prescription drugs which are adulterated or mis-

branded within the meaning of this chapter, or which may not be manufactured, introduced into interstate commerce, or sold, or offered for sale by reason of any provision of this chapter, have been or are being manufactured, processed, packed, transported, or held in any such place, or otherwise bearing on violation of this chapter. * * * The provisions of the second sentence of this subsection shall not apply to—

    *    *    *    *    *    *

(2) practitioners licensed by law to prescribe or administer drugs and who manufacture, prepare, propagate, compound, or process drugs solely for use in the course of their professional practice * * *.

injunction under 21 U.S.C. Section 332 or an inspection warrant upon a showing of probable cause compelling Dr. Daley to permit inspection, whether it will institute criminal proceedings against the Doctor under 21 U.S.C. Sections 331(f) and 333(a), whether it will eventually accede to Dr. Daley's offer of an inspection with counsel present or whether it will simply do nothing. We have repeatedly stated that, particularly where agency action is involved, courts will not and should not intervene unless the need for equitable relief is more than remote or speculative. *See, e. g., American Dietaids Co., Inc. v. Celebrezze,* 317 F.2d 658, 660 (2d Cir.), *cert. denied,* 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 124 (1963). That requisite certainty is absent here.

In a trilogy of decisions [*Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Toilet Goods Assn., Inc. v. Gardner,* 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967); *Gardner v. Toilet Goods Assn., Inc.,* 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967)] the Supreme Court made clear that in assessing the fitness for review of challenges to pre-enforcement agency action, a major consideration is the hardship to the plaintiff which will flow from withholding judicial review. Dr. Daley's situation is unlike that of the plaintiffs in *Gardner v. Toilet Goods Assn., Inc., supra,* and *Abbott Laboratories v. Gardner, supra,* where immediate adverse consequences would predictably have resulted from judicial abstention, and where the FDA's actions required an immediate and significant change in plaintiffs' conduct of their affairs. At bottom all that appellant here suffers is the tentative possibility of a future inspection; it is not even clear that the FDA will attempt to require her to cease dispensing the drugs involved. Seemingly her situation is more closely analogous to that in *Toilet Goods Assn., Inc. v. Gardner, supra,* where the Court found that "consideration of the underlying legal issues would necessarily be facilitated if they were raised in the context of a specific attempt to enforce the regulations." 387 U.S. at 171, 87 S.Ct. at 1528 [footnote omitted].

Judge Neaher expressed no view on the merits of Dr. Daley's contentions regarding the legality of inspection under Section 704(a), nor do we. The judgment dismissing the complaint is affirmed.

Affirmed.