BECTON, DICKINSON AND COMPANY, Plaintiff,

v.

FOOD AND DRUG ADMINISTRATION, Donald Kennedy, Commissioner of Food and Drugs, and William C. Lubas and Richard N. James, Investigators, Food and Drug Administration, Defendants.

UNITED STATES of America, Plaintiff,

v.

BECTON, DICKINSON AND COMPANY, a corporation, doing business as Bard-Parker Division of Becton, Dickinson and Company and Wesley J. Howe, William L. Clark, James A. Levy and Kenneth J. Summa, Individuals, Defendants.

In the Matter of Establishment Inspection of BARD-PARKER, DIVISION OF BECTON, DICKINSON AND COMPANY.

Nos. 77–CV–181, 77–CV–337 and Misc. No. 112.

United States District Court, N. D. New York.

April 11, 1978.

Bond, Schoeneck & King, Syracuse, N. Y., for Becton, Dickinson and Company, Wesley J. Howe, William L. Clark, James A. Levy and Kenneth J. Summa; Charles T. Beeching, Jr., Henry H. Melchor, Roy Weber, Syracuse, N. Y., Becton, Dickinson and Company, Geoffrey R. W. Smith, Covington & Burling, Washington, D. C., of counsel.

Paul V. French, U. S. Atty., Syracuse, N. Y., for United States of America, Food and Drug Administration, Donald Kennedy, William C. Lubas, and Richard N. James; John J. McCann, Asst. U. S. Atty., Syracuse, N. Y., Stephen H. McNamara, Acting Chief Counsel, Kenneth C. Baumgartner, Associate Chief Counsel for Enforcement, Michael R. Taylor, Food and Drug Administration, Rockville, Md., of counsel.

## MEMORANDUM–DECISION AND ORDER

MUNSON, District Judge.

These three companion cases arise out of a central set of simple, undisputed facts. On April 26, 1977, Food and Drug Administration (FDA) Inspectors William C. Lubas and Richard N. James commenced a routine, four-day inspection of the Hancock, New York, manufacturing facility operated by the Bard-Parker Division of Becton, Dickinson & Company. During the inspection, Lubas and James asked to view production records, and the like, under the FDA's new found authority of § 704(a) of the Food, Drug and Cosmetic Act, 21 U.S.C. § 374(a), claiming that the particular facility was engaged in the manufacture of restricted devices. The request to inspect that material was denied.

On May 6, 1977, the FDA sought, and obtained, a Warrant from this Court authorizing Inspector Lubas to inspect samples, equipment, materials, containers, labelling, and most importantly, other things including records, files, papers, processes, controls

and facilities (77 Misc. 112). Upon his return with the Warrant to the Hancock facility on May 9, 1977, along with FDA Inspector Donald D. Howard, Lubas was allowed to view some of Bard-Parker's complaint files for about an hour. However, when the two returned the following day, they were refused access to Bard-Parker records and files.

On May 17, 1977, Becton Dickinson filed a Complaint (77–CV–181) with this Court seeking relief in the form of: 1) declaration that the FDA lacks authority to inspect records, files, papers, or other documents at the Hancock facility relating to "restricted devices" until such time as regulations are properly promulgated by the FDA, as required under the 1976 Medical Devices Amendments; 2) injunction against such an inspection until proper regulations are adopted; and 3) and Order vacating the Warrant of Inspection of May 6, 1977. In this action, the Government has moved for a dismissal, and Becton Dickinson has filed a cross-motion for summary judgment.

The Government commenced an action on September 6, 1977, (77–CV–337) seeking preliminary and permanent injunctive relief against further refusals to allow inspection of the items in issue. Named as defendants in that action are Becton Dickinson, Bard-Parker, Wesley J. Howe, President of Becton Dickinson, William L. Clark, Division Vice-President and General Manager of Bard-Parker, James A. Levy, Vice-President for Manufacturing of Bard-Parker, and Kenneth J. Summa, Plant Manager of Bard-Parker's facility at Hancock, New York. The Government has moved for a preliminary injunction with respect to this case, while the various defendants have asked for dismissal.

Also pending before the Court is a Petition of the Government to have Becton Dickinson, Bard-Parker, and Kenneth J. Summa adjudged in civil contempt for their continuing refusal to honor this Court's Warrant of Inspection (77 Misc. 112).

In 1976, Congress added to the Food, Drug and Cosmetic Act a series of provisions, commonly referred to as the Medical Device Amendments. Act of May 28, 1976, P.L. 94–295, 90 Stat. 539 (1976). Enacted in response to the proliferation of new and increasingly complex medical devices, many of which relate to the saving or supporting of life, the Act was intended to give the FDA increased authority to insure that such devices meet established safety standards prior to being put into use. See 1976 U.S.Code Cong. and Admin.News, p. 1070 *et seq.*

The primary thrust of the 1976 Amendments was to establish three basic classifications for medical devices: 1) those devices for which general controls would be adequate to insure safety and effectiveness (General Controls); 2) those for which performance standards must be established to insure safety and effectiveness (Performance Standards); and 3) those devices requiring premarket approval because of their particularly strong potentialities for causing illness or injury in their use (Premarket Approval). See Food, Drug and Cosmetic Act § 513, 21 U.S.C. § 360c. The provisions call for the seeking out of a wide range of inputs, both from experts in the field, practitioners, and members of the industry, in attempting to place specific medical devices into the appropriate categories.

Also included within the Amendments are provisions relating to banned devices, see Food, Drug and Cosmetic Act § 516, 21 U.S.C. § 360f, and, more relevant to the case *sub judice*, restricted devices, see Food, Drug and Cosmetic Act § 520(e), 21 U.S.C. § 360j(e). Section 704(a) of that Act, as amended, 21 U.S.C. § 374(a), grants to the FDA the power to inspect not only factories, warehouses, establishments or laboratories with respect to restricted devices, but also enlarges the FDA's inspectional power over restricted devices to include all things, including "records, files, papers, processes, controls and facilities." [1] This represents a

---

1. § 374. Inspection—Right of agents to enter; scope of inspection; notice; promptness; exclusions

(a) For purposes of enforcement of this chapter, officers or employees duly designated by the Secretary, upon presenting appropriate

power previously enjoyed by the FDA only with regard to prescription drugs.

 It is the expanded inspection authorization of § 704(a), with regard to restricted devices, upon which the present case is based. The applicability of that section to records, files, papers, controls, and the like, hinges upon whether or not the devices being manufactured by Bard-Parker at the Hancock, New York facility are restricted devices.

Section 520(e) of the Act, 21 U.S.C. § 360j(e) requires the FDA to enact regulations classifying certain medical devices as restricted devices. The Government asserts that the regulation requirement of § 520(e) is met by virtue of 21 C.F.R. § 801.109, a regulation predating the 1976 Amendments, originally enacted under the authority of § 502(f) of the Act, 21 U.S.C. § 352(f). See 41 Fed.Reg. 22,620 (June 4, 1976). The Government maintains that to require the enactment of new regulations defining restricted devices would entail at least two years' time (Government's Memorandum in Support of its Motion to Dismiss 77–CV–181, p. 20), thereby creating a hiatus during which time restricted devices, formerly pre-scription devices, would actually be subject to less regulation than prior to the enactment of the 1976 Medical Device Amendments.

This Court believes that, in enacting § 520(e) of the Food, Drug and Cosmetic Act Amendments, Congress very clearly stated its intended purpose with respect to restricted devices. That section expressly charges the FDA with the responsibility of determining, in accordance with a rather subjective standard set forth in the statute,[2] which particular medical devices should be restricted. The mere regurgitation of that subjective standard in a regulation[3] simply does not fulfill that responsibility.[4] Had Congress intended for the definition of restricted devices to remain so broad and general, it could well have set forth the test, and stated that all devices which satisfy the test shall be restricted, rather than authorizing the FDA to enact regulations to determine which devices fall within the category.

The hiatus suggested by the FDA as existing under this interpretation of § 520(e) is not perceived by this Court. Both

---

credentials and a written notice to the owner, operator, or agent in charge, are authorized (1) to enter, at reasonable times, any factory, warehouse, or establishment in which food, drugs, devices, or cosmetics are manufactured, processed, packed, or held, for introduction into interstate commerce or after such introduction, or to enter any vehicle being used to transport or hold such food, drugs, devices, or cosmetics in interstate commerce; and (2) to inspect, at reasonable times and within reasonable limits and in a reasonable manner, such factory, warehouse, establishment, or vehicle and all pertinent equipment, finished and unfinished materials; containers, and labeling therein. In the case of any factory, warehouse, establishment, or consulting laboratory in which prescription drugs or restricted devices are manufactured, processed, packed, or held, the inspection shall extend to all things therein (including records, files, papers, processes, controls, and facilities) bearing on whether prescription drugs or restricted devices which are adulterated or misbranded within the meaning of this chapter, or which may not be manufactured, introduced into interstate commerce, or sold, or offered for sale by reason of any provision of this chapter, have been or are being manufactured, processed, packed, transported, or held in any such place, or otherwise bearing on violation of this chapter. . . .

**2.** § 520:

\* \* \* \* \* \*

Restricted devices

(e)(1) The Secretary may by regulation require that a device be restricted to sale, distribution, or use— \* \* \* if because of its potentiality for harmful effect or the collateral measures necessary to its use, the Secretary determines that there cannot otherwise be reasonable assurance of its safety and effectiveness.

**3.** 21 C.F.R. § 801.109 Prescription devices.

A device which, because of any potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use is not safe except under the supervision of a practitioner licensed by law to direct the use of such device, and hence for which "adequate directions for use" cannot be prepared, shall be exempt from section 502(f)(1) of the act if all the following conditions are met: \* \* \*

**4.** This is true regardless of whether the regulation was in effect prior to May of 1976, or whether it was enacted in response to the Medical Device Amendments.

§ 502(f) of the Act and 21 C.F.R. § 801.109, through which the FDA previously exercised control over restricted devices (then "prescription devices") remain intact, and continue to allow for FDA regulation of such devices. What the FDA lacks, pending the enactment of regulations, is the power to inspect records, files, and the like, a power which the FDA never possessed in cases of such devices. The FDA will be vested with this additional authority when regulations are properly enacted, pursuant to the Administrative Procedure Act, Title 5 U.S.C. §§ 551–559, as well as § 520(d) of the Food, Drug and Cosmetic Act, 21 U.S.C. § 360j(d), classifying particular medical devices as restricted.[5]

This result accords with the entire theme of the 1976 Amendments, calling for classification of medical devices, with collaboration from members of the industry, practitioners, and experts within the field. Nowhere within the Amendments does Congress intimate that the FDA should be left unfettered to apply such a subjective standard as that contained in § 520(e) of the Act. Because of the ramifications attending the classification of a product as a restricted device, not the least of which is the significant intrusion into a manufacturer's privacy by virtue of the expanded inspection provisions of § 704(a), this Court cannot sanction such an unsupervised, case-by-case exercise of discretion by the FDA.

The Complaint of the Government in 77–CV–337 is accordingly dismissed. Becton Dickinson and its coparties are granted summary judgment on their Complaint for declaratory and injunctive relief in 77–CV–181. The Warrant of Inspection issued by this Court on May 6, 1977, is hereby vacated.

All that remains to be disposed of is the Government's petition to have defendants Becton Dickinson, Bard-Parker, and Kenneth J. Summa adjudged in civil contempt for their continuing refusal to honor the Warrant of Inspection issued by this Court (77 Misc. 112). In light of the fact that the Warrant in question has been vacated, this matter is now moot.[6] The

5. The Government does not contend, nor could it, that the notice appearing in the June 4, 1976 Federal Register, 41 Fed.Reg. 22,620, constituted such a duly enacted regulation. The manifest intent of the FDA in promulgating that notice was to alert the industry that the FDA considered 21 C.F.R. § 801.109 as sufficient to classify all devices formerly considered as prescription devices as restricted under section 520(e).

6. This Court cannot, however, condone the actions of the defendants in refusing to abide by a Writ lawfully issued by this Court. See *United States v. Thriftimart, Inc.*, 429 F.2d 1006 (9th Cir. 1970), cert. den. 400 U.S. 926, 91 S.Ct. 188, 27 L.Ed.2d 185 (1970), reh. den. 400 U.S. 1002, 91 S.Ct. 453, 27 L.Ed.2d 454 (1971). The defendants suggest that a Warrant of Inspection does not mandate compliance, but instead merely protects the agents conducting the search in case force is required to carry it through. This cuts against all notions of law and order, and sets the stage for an obviously intolerable confrontation in every case in which a search warrant is issued.

The defendants' actions in resisting the Warrant of Inspection could have subjected them to liability for Criminal Contempt, 18 U.S.C. § 401(3), cf. New York Penal Law § 195.05, as well as to criminal liability under sections 301(f) and 303(a) of the Food, Drug and Cosmetic Act, 21 U.S.C. §§ 331(f), and 333(a). The fact that the Warrant was ultimately invalidated is no defense to such liability. *Maness v. Meyers*, 419 U.S. 449, 458–459, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975); *Leighton v. Paramount Pictures Corporation*, 340 F.2d 859 (2d Cir. 1965), cert. den. 381 U.S. 925, 85 S.Ct. 1560, 14 L.Ed.2d 683 (1965). Similarly, the fact that refusal was undertaken upon the advice of counsel is of no moment. *United States v. Seavers*, 472 F.2d 607, 611 (6th Cir. 1973). The criminal justice system would be thrown back into a state of turmoil were this Court to sanction a person's private determination of the invalidity of a search warrant, and a subsequent refusal to peacefully abide by it.

Admittedly with 20–20 hindsight, the Court feels that the proper pre-search remedy available to the defendants would have been to seek emergency injunctive relief, in conjunction with their Complaint for declaratory relief (77–CV–181). This case, with the FDA having applied for and received a Warrant of Inspection, would have presented a concrete controversy such as was found lacking in *Daley v. Mathews*, 536 F.2d 519 (2d Cir. 1976), cert. den. 430 U.S. 930, 97 S.Ct. 1548, 51 L.Ed.2d 773 (1977), wherein there was found no evidence that the FDA intended to continue in its efforts to inspect the plaintiff's records after several refusals.

---

Government's petition will accordingly be denied.

It is so ordered.