The PEDRE COMPANY, INC., The Pedre Company Profit Sharing Plan and R. Peter Gunshor, Plaintiffs,

v.

Lee ROBINS, Stanley A. Deitch, CPI Associates, Inc., Windsor Associates, Steven Boughner, Emerson F. Markham, Martin I. Blaustein and Conceptual Planning, Inc., Defendants.

No. 94 Civ. 3032 (SS).

United States District Court, S.D. New York.

Sept. 29, 1995.

662

Kleban & Samor, P.C., Southport, CT (Elliot I. Miller, of counsel), for Plaintiff.

Baker & McKenzie, New York City (Brian S. Cousin, Robert B. Davidson, of counsel), for Defendants Lee Robins, Stanley A. Deitch, CPI Associates, Inc., Windsor Associates, and Conceptual Planning, Inc.

Roemer & Feathersonhaugh, P.C., New York City (Christopher M. Houlihan, of counsel), for Defendant Martin I. Blaustein.

Lawrence A. Weinreich, Syosset, New York (Lawrence A. Weinreich, of counsel), for Defendant Steven Boughner.

1. Defendant Stanley A. Deitch is a certified public accountant and business associate of Robins. Defendant CPI Associates, Inc. ("CPI") is an accounting firm owned by Robins and Deitch. Defendant Windsor Associates ("Windsor") is or was a general partnership in which Robins, Deitch and the other individually named defendants are or were general partners. Defendant Conceptual Planning, Inc. ("Conceptual") was

## MEMORANDUM OPINION AND ORDER

SOTOMAYOR, District Judge.

Defendants move to dismiss the Complaint for lack of subject matter jurisdiction and, in the alternative, to dismiss the state law claims as being preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* For the reasons discussed below, the motion to dismiss is **GRANTED** in part and **DENIED** in part.

### Background

The dispute underlying this action arises from a longstanding friendship and professional relationship between plaintiff Peter Gunshor and defendant Lee Robins. For the purposes of this motion to dismiss, the following facts are taken from the Complaint and will be presumed to be true. Gunshor is president of the Pedre Company, sole trustee of the Pedre Company Profit Sharing Plan ("the Plan"), and the Plan's primary beneficiary. Robins is an accountant who provided professional services to Gunshor and the Plan.[1]

In 1982, Robins persuaded Gunshor to involve the Plan in a real estate tax shelter investment. Robins repeatedly assured Gunshor that he was familiar with the relevant law and that the scheme was legal and proper. To underscore his confidence, Robins told Gunshor that "in the unlikely event any problems arose in connection with the proposed transactions involving the Plan, he would 'take care of them' so that the Plan would not suffer or incur any liability." (First Am.Compl. at 7.) Gunshor agreed to the investment proposal, and Robins and his associates assumed day-to-day management and investment control over the Plan. As part of the deal, defendants retained 85% of the tax shelter's profits for themselves.

Robins' and Deitch's accounting firm until 1990, when it filed a voluntary petition under Chapter 7 of the Bankruptcy Code. CPI is the successor-in-interest to Conceptual. Martin Blaustein, an accountant formerly linked to Conceptual and Windsor, has filed a separate Motion to Dismiss, relying on arguments submitted in the same Memorandum of Law currently before me in this motion.

Without telling Gunshor, however, defendants also sold shares in the scheme to some of their other clients.

The Internal Revenue Service began an audit of the Plan in 1993. Since then, plaintiffs have incurred substantial legal bills to defend the IRS action. Plaintiffs believe their maximum exposure is $4 million in taxes and interest. Their Complaint against defendants alleges breach of fiduciary duty under ERISA and seven pendent state law claims.

In this motion, defendants contend that no case or controversy exists at this time because the plaintiffs' injuries are wholly contingent on future action by the IRS. Alternatively, defendants argue that the state law claims are preempted by ERISA and that the fraud claims have not been pled with the required particularity.

### *Discussion*

## I. Subject Matter Jurisdiction: Case or Controversy

█ The threshold issue is whether the Complaint states a case or controversy ripe for review. The standard for ripeness in a declaratory judgment action is "whether ... there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). The standard was further refined in *Abbott Lab. v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), which holds that ripeness is a function of two factors: "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Abbott*, 387 U.S. at 149, 87 S.Ct. at 1515. Although

the Second Circuit has cautioned that where administrative agency action is involved, courts "should not intervene unless the need for equitable relief is more than remote or speculative," *Daley v. Mathews*, 536 F.2d 519, 522 (2d Cir.1976), it has also held that the immediacy of a claim must be judged, in large part, by "the hardship to the plaintiff which will flow from withholding judicial review," *id.* at 522. *See also In re Combustion Equipment Assocs., Inc.*, 838 F.2d 35, 37 (2d Cir.1988) ("The purpose of the [Declaratory Judgment Act, 28 U.S.C. § 2201] is to enable parties to adjudicate disputes before either side suffers great damage.").

The defendants assert that because the IRS has not yet issued an unfavorable ruling—and may never do so—the plaintiffs have suffered no harm and the parties are not adverse. This argument is disingenuous and does not fully address the Complaint.

The Complaint alleges not one, but *two* concrete claims between the parties, neither of which hinges even remotely on the outcome of the IRS audit. The first arises under ERISA, the second is a state law contract claim, and both are ripe controversies.

█ The essence of the ERISA claim is easily summarized.[2] In the early 1980s, long before the IRS intervened, defendants breached their fiduciary duty to the Plan by embroiling it in a risky tax shelter scheme, by dividing the profits between the Plan and themselves in violation of tax and ERISA laws, and by secretly using the investment scheme to enrich their other clients. The Complaint alleges sufficient facts to support the claim that defendants were fiduciaries, including the fact that they took possession of the Plan's checkbook and assumed control over its day-to-day management and assets.[3]

---

**2.** The Complaint divides its ERISA claim into three Counts. Counts One and Two are virtually identical, the first being asserted by Gunshor as Trustee and the second by the Plan. These claims seek a declaration that defendants breached their fiduciary duties under ERISA and are thus liable for any future tax assessment by the IRS. Count Three, asserted by the Plan, demands equitable relief in the form of restitution of all profits the defendants may have unjustly retained.

**3.** The Complaint asserts that Robins assumed the role of investment advisor to the Plan by proposing the investment and putting it into practice. (First Am.Compl. at 13.) Robins and other defendants exercised control over the Plan's financial documents, made deposits into the Plan's bank account and prepared Plan checks for Gunshor's signature. (First Am.Compl. at 10.)

Although accountants (and other professionals) are not normally considered to be fiduciaries when they provide only routine professional services, their status may change if they acquire discretionary control over a plan. *Mertens v. Hewitt Assocs.*, 948 F.2d 607, 610 (9th Cir.1991), *aff'd, Mertens v. Hewitt Assocs.*, — U.S. —, —, 113 S.Ct. 2063, 2066, 124 L.Ed.2d 161 (1993); *Painters of Philadelphia Dist. Council No. 21 Welfare Fund v. Price Waterhouse*, 879 F.2d 1146, 1149–51 (3d Cir.1989). Moreover, the definition of "fiduciary," 29 U.S.C. § 1002(21)(A), states in relevant part:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

■ Thus I find the Complaint has alleged enough under ERISA to survive the motion to dismiss. Moreover, even if the IRS were fully to vindicate all parties on the tax matter, the issue of breach of fiduciary duty would remain, and both the Plan's attorneys' fee expenditures and defendants' unjust enrichment from diverted profits are actual damages creating a ripe controversy.

■ However, the Plan must be dismissed as an ERISA plaintiff because it has no standing to assert a cause of action under ERISA. The jurisdictional and standing provisions of 29 U.S.C. § 1132 expressly permit only the Secretary of Labor or "a participant, beneficiary, or fiduciary" to bring claims under the Act. This enumeration of potential ERISA plaintiffs does not include an employee benefit plan. *See Pressroom Unions–Printers League Income Sec. Fund v. Continental Assurance Co.*, 700 F.2d 889, 893 (2d Cir.1983) (holding that employee benefit plan may not sue under ERISA in federal district court because Act does not specify plan as party, but that plan may sue as "entity" in state court to pursue state claims such as breach of contract). Thus Counts Two and Three are dismissed, with leave granted to Gunshor to replead Count Three in his capacity as Plan Trustee.

■ The second ripe claim, the contract claim, asserts that defendant Robins (on behalf of himself and his co-defendants) explicitly promised to indemnify the Plan against any adverse IRS action that might result from the tax shelter scheme. This claim asserts that defendants undertook an express obligation—over and above their fiduciary duties of care, loyalty and prudent management—to protect plaintiffs financially if the investment scheme caused any trouble with the IRS. Because the scheme has invited an audit, and has thus caused the Plan to incur attorneys' fees, there is a ripe controversy on this issue regardless of the outcome of the IRS action. This is a state law contract claim over which I have supplemental jurisdiction.

Thus, I find that the standard for ripeness has been met and that a case or controversy exists. All of the facts needed to determine liability have already occurred, the injuries are concrete, and the plaintiffs have made the requisite showing that delay will cause them significant hardship.

## II. Preemption

■ The second question is whether ERISA preempts the plaintiffs' state law claims. ERISA's broad preemption clause, 29 U.S.C. § 1144(a), states that the Act "shall supersede any and all State laws insofar as they ... relate to any employee benefit plan" covered by ERISA. The key phrase—"relate to"—has been interpreted expansively by the courts, but it is not without limits. The Supreme Court has held that ERISA preempts all state laws that threaten, directly or indirectly, ERISA's central goal of creating a nationally uniform system of pension plan regulation. *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 142, 111 S.Ct. 478, 484, 112 L.Ed.2d 474 (1990). With equal clarity, however, the Supreme Court has held that ERISA does not preempt state

laws that have only a "tenuous," "remote" or "peripheral" relation to plan regulation and administration. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100, 103 S.Ct. 2890, 2901, 77 L.Ed.2d 490 (1983). The inquiry in each case is highly fact-specific. In *Ingersoll–Rand*, for example, ERISA preempted a seemingly innocuous state law claim (wrongful discharge) because the plaintiff's entire case hinged on the employer's alleged desire to avoid paying benefits under the Plan.[4] In other cases, the Court has found no preemption of state laws that initially seemed to conflict with ERISA but which on close inspection proved to be peripheral. *See, e.g., New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* —— U.S. ——, ——–——, 115 S.Ct. 1671, 1677–80, 131 L.Ed.2d 695 (1995) (holding that ERISA does not preempt New York statute imposing hospital surcharges on patients who receive health insurance through employee benefit plans; statute does not "bind plan administrators to any particular choice" of medical insurance or otherwise "preclude uniform administrative practice.").

In the instant case, because the preemption analysis depends so heavily on the facts of each claim, I must analyze each of plaintiff's state law claims individually. The Complaint is confusing in its labelling of these claims and their precise legal basis, but they appear to unfold as follows:

Count Four, asserted by Pedre, seeks indemnification from defendants if Pedre is forced to help Gunshor and the Plan pay any taxes assessed by the IRS. Count Five, asserted by Gunshor and the Plan, alleges negligence and/or fraud. Count Six, asserted by Gunshor and the Plan, alleges breach of fiduciary duty. Count Seven, asserted by the Plan alone, seeks disgorgement of any profits unjustly retained by the defendants. Count Eight, asserted by Gunshor and the Plan, alleges malpractice and breach of contract.[5] Count Nine, asserted by all plaintiffs, alleges conspiracy to commit fraud. Count Ten, asserted by all plaintiffs, seeks indemnification from defendants if the IRS disqualifies the Plan.

■ Count Six, breach of fiduciary duty, is clearly preempted by ERISA. Breach of fiduciary duty is necessarily an ERISA claim. There can be no fiduciary duty unless defendants are found to be fiduciaries of the Plan. If defendants are non-fiduciaries, they may owe a common law duty of care to plaintiffs, but not a fiduciary duty. Count Six is therefore dismissed.

■ Count Four (Pedre's indemnification claim) is dismissed for failure to state a claim. Pedre has alleged no relationship or agreement with defendants that could create a duty on defendants' part. Pedre has alleged no contract with defendants that included Pedre as a party. Pedre has wisely refrained from attempting to state a claim under ERISA; as an employer, it has no standing to do so. ERISA, 29 U.S.C. § 1132(a); *Pressroom Unions–Printers League Income Sec. Fund v. Continental Assurance Co.,* 700 F.2d 889, 892 (2d Cir. 1983) ("[A]n employer, [being a party] not named under ERISA's jurisdictional provisions, may not bring suit under the Act.") (citation omitted). Because Pedre lacks standing to sue defendants as ERISA fiduciaries, its sole option is to sue defendants as non-fiduciaries under state law, a claim it has not pled. Count Four is therefore dismissed, with leave to replead if Pedre can allege facts to support a common law claim against defendants.

■ The remaining Counts present more complex questions, because they turn on whether defendants are found to be fiduciaries or non-fiduciaries. It is undisputed that plaintiffs may not sue under state law if their cause of action lies under ERISA. *In-*

---

**4.** The Court held that the "essence of the plan" was at issue, *id.,* 498 U.S. at 140, 111 S.Ct. at 483, and that the plaintiff's remedy fell squarely within the ambit of ERISA, *id.* at 143, 111 S.Ct. at 485.

**5.** The Complaint does not explicitly label any particular cause of action as a breach of contract claim, but the Complaint does allege that a contract was made (First Am.Compl. at 7), and plaintiffs' response papers to the instant motion indicate that a breach of contract claim is included in Count Eight. (Pls.' Mem.Opp.Defs.' Mot.Dismiss at 3.)

*gersoll–Rand,* 498 U.S. at 145, 111 S.Ct. at 486 (holding that state law claim is preempted if it "purports to provide a remedy for the violation of a right expressly guaranteed by [ERISA]"). It is equally clear that plaintiffs may not double-plead their injuries, simultaneously seeking recovery for identical conduct under both ERISA and state law. *Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 288 (2d Cir.1992) (holding that ERISA preempts a "state common law action which merely amounts to an alternative theory of recovery for conduct actionable under ERISA"). These standards, however, are of little help at the motion-to-dismiss stage. In the instant case, the evidence has not yet shown whether defendants are fiduciaries. If they are fiduciaries, plaintiffs must plead their injuries under ERISA. If they are not fiduciaries, plaintiffs have no ERISA claim but may proceed at common law. In *Diduck,* upon which defendants rely in making their motion, the court had already determined that a trustee had breached his fiduciary duties (and had possibly committed fraud). On that basis, the Second Circuit remanded for determination of the fraud claim under ERISA, and held that plaintiff's common law fraud claim was preempted. *Id.* at 279, 288. The case at bar has not advanced to that stage.[6]

▉▉▉ Thus, I accept that plaintiffs may be pleading in the alternative, which they are entitled to do at this stage, and I rule accordingly. To the extent that defendants are fiduciaries, ERISA preempts Counts Five (fraud and/or negligence), Seven (unjust enrichment), Eight (malpractice and breach of contract), Nine (conspiracy), and Ten (indemnification if the IRS disqualifies the Plan). To the extent that defendants are not fiduciaries, the five state law claims may survive preemption. The courts have held that funds, fund trustees and fund sponsors who have no cause of action under ERISA may assert garden-variety claims at common law. *See, e.g., Painters of Philadelphia,* 879 F.2d at 1152–53 (finding no preemption of state law malpractice claim against non-fiduciary

accountants); *Mertens v. Kaiser Steel Retirement Plan,* 829 F.Supp. 1158, 1161–62 (N.D.Cal.1992) (no preemption of state law malpractice claim against non-fiduciary actuary, despite some overlap with ERISA); *Isaacs v. Group Health, Inc.,* 668 F.Supp. 306, 312–13 (S.D.N.Y.1987) (no preemption of state law breach of contract and negligence claims against non-fiduciary actuary and computer specialist) ("ERISA nowhere provides for exclusive federal jurisdiction over claims against non-fiduciary service providers who commit malpractice or breach of contract.").

▉▉▉ Defendants' final argument is that the fraud claims have not been pled with the required particularity. I am not persuaded. The elements of common law fraud are: material false representation (or omission) of an existing fact, knowledge of falsity, intent to defraud, reliance, and injury. *See, e.g., Diduck,* 974 F.2d at 276. The Complaint alleges all of these elements with enough specificity to allow defendants to respond. (*See* First Am.Compl. at 18–19, 24–25).

### Conclusion

In accordance with the foregoing discussion, the Motion to Dismiss is **GRANTED** in part and **DENIED** in part. Counts Two and Three of the Complaint are dismissed for lack of federal jurisdiction, but plaintiff Gunshor is given leave to replead Count Three in his capacity as Plan Trustee. Count Four is dismissed for failure to state a claim, but Pedre is given leave to replead if it can provide facts to support a claim. Count Six is dismissed as preempted by ERISA. I consider the remaining state law claims, Counts Five, Seven, Eight, Nine and Ten, as pled in the alternative, and as such, they survive preemption for the purposes of this motion.

The Clerk of the Court is directed to enter this Order in defendant Martin Blaustein's motion to dismiss, which relies on the same Memorandum of Law currently before me in this motion. (*See* Fn. 1 of this Order.)

---

**6.** If defendants are willing to concede that they are fiduciaries, however, I will dismiss the state law claims.

Finally, the parties are directed to attend a pre-trial conference before me on October 27, 1995, at 3:00 pm, in Courtroom 14B of the U.S. Courthouse at 500 Pearl St., New York, New York, in order to discuss the status of discovery and to present me with a case management plan on what remains to be done.

**SO ORDERED**