JOSEPH P. SALADINO *et al.*, Plaintiffs-Appellants, v. TEAM CHEVROLET, INC., Defendant (Ryan Warranty Services, Inc., Defendant-Appellee; General Motors Acceptance Corporation, Defendant).

Second District   No. 2—92—0578

Opinion filed April 2, 1993.

James R. Sullivan, of Oak Brook (James Bryan Sullivan, of counsel), for appellants.

John C. Bartler, of McKenna, Storer, Rowe, White & Farrug, of Wheaton (Daniel E. O'Brien, of counsel), for appellee.

JUSTICE QUETSCH delivered the opinion of the court:

Plaintiffs, Joseph and Connie Saladino, brought suit against defendants, Team Chevrolet, Inc. (Team Chevrolet), Ryan Warranty Services, Inc. (Ryan), and General Motors Acceptance Corporation (GMAC), for breach of express warranty and breach of implied warranty under the Magnuson-Moss Act (15 U.S.C.A. §2301 *et seq.* (West 1982)), common-law fraud, and fraud and deceptive practices under the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1991, ch. 121½, par. 261 *et seq.*). Plaintiffs appeal from the trial court order granting summary judgment in favor of defendant Ryan Warranty Services. We affirm.

On August 28, 1989, plaintiffs visited Team Chevrolet's used car lot to examine a used 1979 Chevrolet Corvette. Accompanied by Ed Maniurka, one of Team Chevrolet's used car salesmen, they drove the car to the auto shop, where Joseph Saladino is employed, to examine it. Joe looked under the hood and put the car up on the rack, at which time he discovered an oil leak. When Joe showed Ed Maniurka the

leak, Ed stated, "[T]here's a warranty that will cover that." He informed Mr. and Mrs. Saladino that a "good one" would cost $500 extra.

They returned to Ed's office at Team Chevrolet where Ed showed Joe and Connie (the Saladinos) a brochure entitled, "Extended Used Car Protection Select Car Coverage, Administered by: Ryan Warranty Services, Inc." After reaching an agreement as to the purchase price of the vehicle, Jim Foley, another salesman, presented a form to Joe and Connie entitled, "Used Vehicle Mechanical Repair Agreement."

The name "Ryan Warranty Services, Inc.," appeared at the top of the form. Joseph Saladino was listed as the customer, Team Chevrolet was listed as the dealer, and the coverage under the agreement was to be for 12 months from the agreement date or when 12,000 additional miles were registered on the odometer, whichever occurred first. The agreement date was listed as August 28, 1989. The odometer reading was listed as 36,706 miles. The agreement provided space for the signatures of the customer and the dealer's representative. Joseph Saladino signed the agreement as customer, and J. Foley signed as dealer's representative.

The agreement states: "This form describes the protection *you* will have under *your* Mechanical Repair Agreement. In return for payment by *you* of the Agreement Charge and subject to all the terms of this Agreement, *we* agree with *you* as follows ***." (Emphasis in original.) The terms "you" and "your" are defined as meaning the customer. The terms "we," "us," or "our" are defined as meaning the dealer issuing the agreement. The agreement sets forth the specific parts covered. It excludes costs covered by any warranty of the manufacturer, State-required dealer warranty or repairer's guarantee.

Plaintiffs allege Jim Foley told them the agreement was a written warranty. Plaintiffs claim they would not have purchased the car without a warranty.

Subsequent to purchase, plaintiffs experienced numerous problems with the automobile. A few weeks after the purchase, Joe called Jim Foley to tell him that he wanted to get some of the problems repaired. Plaintiffs allege Jim Foley told them they would have to wait until they received the paper work in the mail from the warranty company. Late in October 1989, Joe informed Jim Foley that he had not yet received the paper work. Jim Foley allegedly responded that plaintiffs should "give it a while longer, you should be getting something in the mail."

Plaintiffs claim they received a letter from Ryan Warranty Services toward the end of December 1989. That letter states:

"Ryan Warranty Services, Inc. is the administrator for certain mechanical repair agreements sold by Team Chevrolet, Inc. Please be advised that the above referenced agreement was not accepted. The agreement is not eligible for coverage because coverage months/miles are not valid based on vehicle year and/or odometer mileage.

Since your dealership may be able to resolve this matter, we would suggest you contact them as soon as possible.

We appreciate your business and thank you for your cooperation."

After receiving this letter, Connie contacted Jim Foley. He informed her there was no warranty on the car. Connie informed Joe of her conversation with Jim Foley. Joe then called Jim to ask why there was no warranty. Jim informed Joe that the car was too old. Joe asked if he was going to get a refund. Jim responded that Joe would not get a refund, but to "keep making the bigger payments and you'll have the car paid off sooner." Joe stated in his deposition that he believed this meant they would credit his account with GMAC so that he would have the car paid off sooner.

GMAC credited plaintiffs' account $699.35 including a credit for the finance charge plaintiffs would have paid on the $500 service contract. Plaintiffs subsequently received a new payment booklet with reduced monthly payments. Plaintiffs ceased making payments to GMAC.

Plaintiffs filed suit against Team Chevrolet, Ryan Warranty Services and GMAC. Ryan filed a motion for summary judgment on November 2, 1991. Subsequently, plaintiffs filed a motion to compel requesting that Michael McCay, legal liaison for Ryan, be compelled to answer certain questions posed to him by plaintiffs' attorney during his discovery deposition.

At the hearing on Ryan's motion for summary judgment, plaintiffs argued summary judgment was not appropriate because there were a number of factual disputes in the case. Plaintiffs asserted there was a dispute over whether the agreement was a warranty and whether there was a rescission. Plaintiffs' attorney stated:

"So, our position is that summary judgment isn't appropriate for those reasons, as well as the fact that discovery is ongoing; that we have had depositions; that answers to questions were— were denied us based on the advice of counsel. So not only do we have depositions out there that they want to do, but the

depositions that we have done, there have been some questions that we have asked that were not answered."

After hearing argument, the court found that the document submitted was a repair contract, not a warranty, and that although representations were made to plaintiffs that the document was a warranty, those representations were not made by employees of Ryan. The court concluded, as a matter of law, there was no breach of express or implied warranty or fraud as to Ryan and dismissed the action against Ryan with prejudice. In its order, the trial court found there was no just reason to delay the enforcement of its order pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)). Plaintiffs timely appeal.

■ As a preliminary matter, we question the propriety of the use of a motion for summary judgment under the circumstances of this case. A motion for summary judgment is to be used when the pleader " 'assumes that a cause of action has been stated and proceeds to determine whether there are any material issues of fact to be tried.' " (*Delgatto v. Brandon Associates, Ltd.* (1989), 131 Ill. 2d 183, 190, quoting *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 406.) A section 2—615 motion to strike and dismiss is used when a party challenges whether a pleading is legally valid or sustainable, *i.e.*, whether even if all the facts alleged by the pleader are true, the pleader has a valid cause of action or defense. *Delgatto*, 131 Ill. 2d at 189-90.

We question whether Ryan should have proceeded with a motion to strike and dismiss plaintiffs' cause of action rather than a motion for summary judgment. However, because the parties presented it at the trial level as a motion for summary judgment, and the trial court decided it as such, that is the motion we address on appeal. See *Hallmark Insurance Co. v. Chicago Transit Authority* (1989), 179 Ill. App. 3d 260.

A trial court should grant summary judgment where the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c).) Although the use of a summary judgment procedure is encouraged as an aid to the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and should only be allowed when the right of the moving party is clear and free from doubt. (*Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 271.) Moreover, in determining whether the moving party is entitled to summary judgment, the court

must construe the pleadings, depositions, admissions and affidavits strictly against the movant and liberally in favor of the opponent. *Loyola Academy*, 146 Ill. 2d at 271.

■ On appeal, plaintiffs contend that an issue of fact exists regarding apparent agency on the part of Team Chevrolet's employees. Plaintiffs argue that because Ryan's name appears on the brochure shown to plaintiffs before they purchased the automobile and on the agreement itself, plaintiffs believed that Team Chevrolet's salesman, Jim Foley, had the authority to represent Ryan. However, plaintiffs did not allege apparent authority in their pleadings, nor did they raise this theory at the trial level. The theory upon which a case is tried in the lower court cannot be changed on review. (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147; *Barkei v. Delnor Hospital* (1990), 207 Ill. App. 3d 255, 263.) Accordingly, this issue is waived for the purposes of this appeal.

Plaintiffs also contend on appeal that the trial court erred in finding that the agreement was not a warranty. We disagree. Construing a contract is a matter of law suitable for summary judgment. (*Continental Mobile Telephone Co. v. Chicago SMSA Ltd. Partnership* (1992), 225 Ill. App. 3d 317, 322.) There is a disputed fact precluding summary judgment only when the material writing contains an ambiguity which requires the admission of extrinsic evidence. *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d at 272.

■ The agreement at issue in the present case is clearly not a warranty. The agreement is entitled "Used Vehicle Mechanical Repair Agreement." It does not affirm the quality or workmanship of the automobile, nor does it warrant against defects. Rather, the agreement, by its own terms, is an offer to repair certain defects that may occur within a certain time period or number of miles, which defects are not covered by a manufacturer's or other warranty. In fact, plaintiffs admit in their pleadings that the agreement is not a warranty but rather a repair service agreement. In count IV of their complaint, plaintiffs state: "In truth and in fact the 'warranty' was nothing more than an offer by plaintiffs to enter into a 'service agreement' with Defendant, Ryan Warranty Services, Inc. ***."

Moreover, the parties to the agreement are clearly set forth as the dealer and the customer. The promises contained in the agreement are between the dealer and the customer. Ryan is merely the administrator of the agreement.

Counts I and II of plaintiffs' complaint alleged a breach of express warranty and a breach of implied warranty under the Magnuson-Moss

Act (15 U.S.C.A. §2301 *et seq.* (West 1982)). The Magnuson-Moss Act defines a "written warranty" as:

"(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

(B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,

which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product." 15 U.S.C.A. §2301(6) (West 1982).

An "implied warranty" is defined as "an implied warranty arising under State law *** in connection with the sale by a supplier of a consumer product." (15 U.S.C.A. §2301(7) (West 1982).) The agreement at issue does not come within either definition.

In fact, the Magnuson-Moss Act defines a "service contract" as "a contract in writing to perform, over a fixed period of time or for a specified duration, services relating to the maintenance or repair (or both) of a consumer product." (15 U.S.C.A. §2301(8) (West 1982).) Thus, we conclude the trial court was correct in finding that the agreement at issue was a service contract and not a warranty and in granting summary judgment in Ryan's favor with regard to counts I and II alleging breach of express and implied warranty.

The last two counts of plaintiffs' complaint, counts IV and V, allege common-law fraud and consumer fraud under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1991, ch. 121½, par. 261 *et seq.*). Plaintiffs allege their purchase of the automobile and the warranty was induced by false representations made by defendants.

To prevail in a cause of action for common-law fraud, a plaintiff must prove: (1) that the defendant made a statement; (2) of a material nature as opposed to an opinion; (3) that was untrue; (4) that was known by the person making it to be untrue, believed by him to be untrue, or made in culpable ignorance of its truth or falsity; (5) that was relied upon by the victim to his detriment; (6) made for the purpose of inducing reliance; and (7) such that the victim's reliance led to

742

his injury. (*Richard/Allen/Winter, Ltd. v. Waldorf* (1987), 156 Ill. App. 3d 717, 721.) Similarly, in an action under the Consumer Fraud Act, a plaintiff must prove defendants made a false statement of material fact in the conduct of any trade or commerce with the intent to induce others to rely thereon. (*People ex rel. Hartigan v. E & E Hauling, Inc.* (1991), 218 Ill. App. 3d 28, 40; see Ill. Rev. Stat. 1991, ch. 121½, par. 262.) In addition, a Consumer Fraud Act complaint must be pleaded with the same specificity as an action for common-law fraud. *People ex rel. Hartigan v. E & E Hauling, Inc.*, 218 Ill. App. 3d at 40.

■ Plaintiffs' complaint merely alleges that the defendants made statements that were false and untrue. Plaintiffs fail to allege with specificity any particular statements made by Ryan which were false and untrue. In addition, our review of the plaintiffs' testimony during their depositions reveals the allegedly false representations were made by employees of Team Chevrolet. Plaintiffs contend on appeal that Ryan clothed Team Chevrolet salesmen with apparent authority to represent and bind Ryan. However, as we previously stated, plaintiffs failed to raise this theory of recovery at the trial level, and, as such, it is waived on appeal. Thus, we conclude the trial court was correct in granting summary judgment in favor of Ryan as to counts IV and V as well.

Plaintiffs contend the trial court erred in granting summary judgment before plaintiffs completed discovery. Plaintiffs claim most of the material witnesses to the transaction had not yet been deposed at the time of the motion for summary judgment.

■ A party may not resist a motion for summary judgment simply by identifying potential trial witnesses and then failing to determine what their opinions are or what their testimony might be. (*Addison v. Whittenberg* (1988), 124 Ill. 2d 287, 299.) At the hearing on Ryan's motion for summary judgment, plaintiffs argued summary judgment was not appropriate at the time because discovery was ongoing. However, plaintiffs failed to inform the trial court of the names and probable testimony of any witnesses who had not yet been deposed. In addition, plaintiffs failed to do so on appeal.

Supreme Court Rule 191(b) permits a party to file an affidavit in opposition to a motion for summary judgment stating that material facts which ought to appear in the affidavit are known only to persons whose affidavits affiant is unable to procure. (134 Ill. 2d 191(b).) The affidavit is to name the persons and show why the affidavits cannot be procured and what the affiant believes they would testify to if sworn. (134 Ill. 2d R. 191(b).) Plaintiffs did not comply with Rule

191(b). It was plaintiffs' duty to present the names and probable testimony of the potential witnesses to the trial court. (See *Addison v. Whittenberg*, 124 Ill. 2d at 299.) Consequently, we conclude the trial court did not err in denying plaintiffs' "request" for further discovery.

■ Lastly, we note that we lack the jurisdiction to determine the propriety of the trial court's denial of plaintiffs' motion to compel because the trial court's determination is not a "final and appealable order." (See *People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 171 (in general, discovery orders are not final and appealable under the supreme court rules); see also *Tidwell v. Smith* (1960), 27 Ill. App. 2d 63, 74.) The fact that the trial court makes an express finding pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) does not necessarily mean that the order was final and appealable. (*Viirre v. Zayre Stores, Inc.* (1991), 212 Ill. App. 3d 505, 511.) A final and appealable order is one which terminates the litigation between parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate part thereof. *Viirre*, 212 Ill. App. 3d at 512.

The portion of the trial court's order granting summary judgment in favor of Ryan is final and appealable because it terminates the litigation with regard to Ryan. However, the portion of the order denying plaintiffs' motion to compel does not terminate the litigation, either in whole or in part, with regard to Ryan or any of the remaining defendants. Although it is questionable whether the trial court intended to include its ruling on plaintiffs' motion to compel within the scope of its Rule 304(a) finding in the first instance, we conclude, regardless of the trial court's Rule 304(a) finding, that portion of the order is not final and appealable.

Accordingly, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

WOODWARD and GEIGER, JJ., concur.