**GALLAGHER CORPORATION, an Illinois corporation, individually and in its capacity as sponsor of the Gallagher Corporation Employee Defined Benefit Pension Plan, Plaintiff,**

v.

**MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, a corporation, Defendant.**

No. 95 C 6553.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 9, 1996.

Edmund M. Tobin, Edward J. Whalen, Hedberg, Tobin, Flaherty & Whalen, P.C., Chicago, IL, for Gallagher Corporation.

J. Robert Geiman, David Joseph Novotny, Peterson & Ross, Chicago, IL, for Massachusetts Mutual Life Insurance Company.

## MEMORANDUM AND ORDER

MORAN, Senior District Judge.

Plaintiff Gallagher Corporation (Gallagher) brought this seven-count lawsuit against defendant Massachusetts Mutual Life Insurance Co. (Mass Mutual) alleging in count I that defendant breached its fiduciary duty under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. §§ 1001 *et seq.* Counts II through VI deny Mass Mutual's status as a fiduciary and assert various state law claims based on theories of negligence (counts II and VI), negligent misrepresentation (counts III and V), and violations of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2 *et seq.* (Consumer Fraud Act) (counts IV and VII).[1] In each count plaintiff seeks $800,000. Mass Mutual is before this court, pursuant to Federal Rule of Civil Procedure 12(b)(6), on a motion to dismiss counts II–VII. For the following reasons, defendant's motion is denied.

## BACKGROUND

The allegations are straightforward. In 1978, Mass Mutual designed, established and sold to Gallagher a split-funded defined benefit pension plan (the Plan) for the benefit of Gallagher's employees in their retirement (Cplt. ¶¶ 5, 6). The Plan is governed by ERISA (Cplt., count I, ¶ 6).

In August 1993, Gallagher considered terminating the Plan pursuant to 29 U.S.C.A. § 1341, but was advised that it could not because of $800,000 in underfunded liabilities (Cplt., count V, ¶¶ 11–13). Gallagher filed a seven-count complaint alleging that Mass Mutual breached its fiduciary duty imposed by ERISA, 29 U.S.C.A. § 1104 (Cplt., count I, ¶ 12). In the alternative, Gallagher alleged that Mass Mutual was negligent or committed professional malpractice (counts II and VI). Plaintiff also asserted negligent misrepresentations (counts III and V) and violations of the Illinois Consumer Fraud Act (counts IV and VII).[2]

Mass Mutual originally moved to dismiss all seven counts. On February 1, 1996, Judge Shadur, in a minute order, denied defendant's motion to dismiss count I. He also denied its motion to dismiss counts III and V insofar as he found the pleadings to sufficiently plead state law claims. Judge Shadur, however, left open the question of whether those claims (counts III and V), and the other state law claims (counts II, IV, VI, and VII), were preempted by ERISA. In this order we decide whether the pleadings in counts II, IV, VI, and VII state a claim upon which relief may be granted and, if so, whether the state law claims are nonetheless preempted by ERISA.

## DISCUSSION

■ Since dismissal is a drastic measure, a complaint should be dismissed only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

---

1. Subject matter jurisdiction over the ERISA claim is taken pursuant to 29 U.S.C.A. §§ 1132(e)(1), 1132(f) and 28 U.S.C.A. § 1331 and over the state law claims pursuant to 28 U.S.C.A. §§ 1332, 1367.

2. Counts II, III and IV were brought by Gallagher as the Plan sponsor, while counts V, VI and VII were brought individually.

*Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Gorski v. Troy,* 929 F.2d 1183, 1186 (7th Cir.1991) (quoting *Conley* ). For purposes of the Rule 12(b)(6) motion, all well pled factual allegations are taken as true, *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Gomez v. Toledo,* 446 U.S. 635, 637 n. 3, 100 S.Ct. 1920, 1921 n. 3, 64 L.Ed.2d 572 (1980), and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiffs, *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249, 109 S.Ct. 2893, 2905, 106 L.Ed.2d 195 (1989); *Gomez v. Illinois State Bd. of Educ.,* 811 F.2d 1030, 1039 (7th Cir.1987). Moreover, plaintiff is entitled to "state as many separate claims ... as the party has regardless of consistency...." Fed.R.Civ.Pro. 8(e)(2).

## A. Sufficiency of the Pleadings

### 1. Counts II and VI—Negligence or Professional Malpractice

Mass Mutual first argues that Gallagher's negligence claim is barred by the Illinois economic loss doctrine. *See Moorman Mfg. Co. v. National Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982). "In the absence of a decision by the highest state court, we should decide the matter in the way we divine that the highest state court would rule if the issue were squarely presented to it. Decisions of intermediate appellate state courts generally control unless there are persuasive indications that the highest state court would decide the issue differently." *L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.,* 9 F.3d 561, 574 (7th Cir.1993). The latest pronouncement from the Illinois Supreme Court on professional malpractice, *Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co.,* 159 Ill.2d 137, 201 Ill.Dec. 71, 636 N.E.2d 503, *cert. denied,* —— U.S. ——, 115 S.Ct. 358, 130 L.Ed.2d 312 (1994), guides our analysis.

In *Congregation,* the state supreme court found that accountants, like attorneys, owe their clients extra contractual duties which are impossible to memorialize in contracts, and that therefore the economic loss doctrine would not bar tort recovery against them:

The evolution of the economic loss doctrine shows that the doctrine is applicable to the service industry only where the duty of the party performing the service is defined by the contract that he executes with his client. Where a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty.

While a client contracts with an accountant regarding some general matters, an accountant must make his own decisions regarding many significant matters, and the final decision he makes is not necessarily contingent on the contract he executes with his client.... This knowledge and expertise cannot be memorialized in contract terms, but is expected independent of the accountant's contractual obligations.

An analogy to the accountant-client relationship can be found in the attorney-client relationship. In both cases, the ultimate result of the relationship between the professional and client is something intangible. Whether the professional produces a legal brief or a financial statement, the value of the services rendered lies in the ideas behind the documents, not in the documents themselves. In contrast ... the relationship between an architect and his client produces something tangible, such as a plan that results in a structure. The characteristics of a tangible object are readily ascertainable, and they can be memorialized in a contract and studied by the parties.... It is not necessary or generally possible to memorialize all the elements of "competent representation" in a contract.... Application of the *Moorman* doctrine limiting recovery of purely economic losses to contract, therefore, is inappropriate where a relationship results in something intangible.... This duty to observe reasonable professional competence exists independently of any contract. The economic loss doctrine does not bar recovery in tort for the breach of a duty that exists independently of a contract.

*Congregation of the Passion,* 201 Ill.Dec. at 82–84, 636 N.E.2d at 514–16.

■ On this motion to dismiss we will assume that the nature of Mass Mutual's services may be described as "business consulting." Business consultants generally hold themselves out as professionals who owe duties of care and loyalty to their clients which exist independent of any contract. Moreover, their products are often advisory in character and thus intangible, the way an attorney's brief is valuable for the ideas that it provides. *Id.* at 83, 636 N.E.2d at 515. Thus, based on the allegations before us, the stage in the proceedings, and the assumptions about the character of Mass Mutual's services, we think the Illinois Supreme Court would hold that the services Mass Mutual provides are more akin to those of an attorney or accountant than those of an architect and that the economic loss doctrine would not apply.[3] Plaintiff has, at this stage, properly stated a claim for relief in counts II and VI.

### 2. Counts IV and VII—Consumer Fraud Act

■ Claims made pursuant to the Illinois Consumer Fraud Act (counts IV and VII) must be plead with specificity. *E.g., Saladino v. Team Chevrolet, Inc.,* 242 Ill.App.3d 735, 183 Ill.Dec. 320, 326, 611 N.E.2d 583, 589 (2d Dist.1993), *appeal denied,* 152 Ill.2d 580, 190 Ill.Dec. 910, 622 N.E.2d 1227 (1993) (TABLE); *Appraisers Coalition v. Appraisal Inst.,* 845 F.Supp. 592, 608–09 (N.D.Ill. 1994). Specifically, a plaintiff must state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Schiffels v. Kemper Fin. Svcs., Inc.,* 978 F.2d 344, 352 (7th Cir.1992) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.,* 959 F.2d 677, 683 (7th Cir.1992)). The purpose of the rule is to provide defendant with sufficient information to answer the allegations. *See Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.,* 749 F.Supp. 869, 872 (N.D.Ill.1990).

■ Paragraph 11 of count IV and paragraph 10 of count VII allege:

Mass Mutual violated the [Consumer Fraud Act] through the following false, unfair and deceptive practices and by misrepresenting the following material facts:

a. that purchasing more expensive whole life insurance policies rather than less expensive term insurance would provide adequate funding for the Plan;

b. that the levels of contributions were adequate to fund the Plan;

c. that certain employees salaries should be increased without adequately reserving for liabilities; and

d. that actuarial assumptions and methods were proper for establishing actuarial valuations for the Plan and were realistic in light of the actual experience of the Plan.

These allegations, and those contained in paragraphs 7–10 in count I, do not satisfy the technical pleading requirements. We think defendant is entitled to somewhat more specificity by alleging at least some instances in which the misrepresentations were made. We dismiss counts IV and VII, with leave to amend within 21 days.

### B. Preemption

■ Since we find that Gallagher has sufficiently pleaded his state law claims, or he may be able to do so, it is necessary for us to decide whether they are preempted by section 514(a) of ERISA, 29 U.S.C.A. § 1144(a). Whether a state law is preempted is a matter of congressional intent, *see e.g., Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983); *Maciosek v. Blue Cross & Blue Shield United of Wis.,* 930 F.2d 536, 539 (7th Cir.1991) (citing *FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990)), so we begin with the statute:

Except as provided in subsection (b) [the savings clause] of this section, the provi-

---

**3.** We do not think the Seventh Circuit's warning in *Great Cent. Ins., Co. v. Insurance Svcs. Office, Inc.,* 74 F.3d 778, 786 (7th Cir.1996), that "a plaintiff who needs a common law departure or innovation to win should bring his suit in state court rather than in federal court," is contrary. Here, plaintiff does not seek to have an old body of law (negligence) extended, but to cabin a newer doctrine.

sions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C.A. § 1144(a) (emphasis added). The breadth of the preemption provision is wide, *see e.g., Shaw*, 463 U.S. at 96, 103 S.Ct. at 2899,[4] and it applies to both state common law and statutes, *see e.g., FMC Corp. v. Holliday*, 498 U.S. 52, 57, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990) (state statute); *Metropolitan Life Insur. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) (same); *Pilot Life Insur. Co. v. Dedeaux*, 481 U.S. 41, 43, 48 n. 1, 107 S.Ct. 1549, 1550, 1553 n. 1, 95 L.Ed.2d 39 (1987) (common law); *Ingersoll–Rand v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (same). The provision also reaches "generally applicable laws, not just laws aimed exclusively at employee benefit plans." *General American Life Insur. Co. v. Castonguay*, 984 F.2d 1518 (9th Cir.1993) (citing *Dedeaux*, 481 U.S. at 47–48, 107 S.Ct. at 1553).

■ The provision is not, however, without bounds. *See, e.g., Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 832–33, 108 S.Ct. 2182, 2186–87, 100 L.Ed.2d 836 (1988) ("run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan" survive preemption);[5] *Safeco Life Ins. v. Musser*, 65 F.3d 647 (7th Cir.1995) (surcharge imposed on insurance companies so

that state can pay for the uninsurable is not preempted); *Redall Industries, Inc. v. Wiegand*, 876 F.Supp. 147 (E.D.Mich.1995) (articulating the "remote and peripheral" exception from *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21). Only those laws which "relate to" an ERISA plan are preempted, and "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a *connection with* or *reference to* such a plan." *Shaw*, 463 U.S. at 96–97, 103 S.Ct. at 2900 (emphasis added). In addition, justice and common sense dictate that only those parties that are subject to ERISA's liability provisions are entitled to rely on its preemption provision to shield themselves from liabilities imposed by state law. *Cf. Central States, Southeast and Southwest Areas Health & Welfare Fund v. Neurobehavioral Associates*, 53 F.3d 172, 174 (7th Cir.1995) (holding that restitution for overpayment of benefits is actionable under ERISA; reasoning, in part, that plaintiff "could not pursue this action in state court because a state law claim would be preempted by ERISA.").

■ Since it is the relationship among or between ERISA entities[6] that is the linchpin to ERISA preemption, *see Castonguay*, 984 F.2d at 1521; *Central States*, 53 F.3d at 173–74 (the fiduciary-beneficiary relationship is one "which is of primary concern under ERISA"), only those generally applicable state rules that affect the relationship between any two of the ERISA entities are preempted; those state laws which affect the relationship between one of these entities and an outside party will not disrupt

---

**4.** The scope of the provision is so wide that ERISA preempts even those state laws which are *consistent* with ERISA's substantive requirements. *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2388, 85 L.Ed.2d 728 (1985).

**5.** In *Mackey*, plaintiff/respondent was a collection agency to whose clients certain ERISA plan participants owed money. Respondent sought and obtained money judgments against 23 participants, and tried to garnish the participants' benefits to collect. The state trial court granted the garnishment request; the appellate court reversed, based on a state statute which prohibited the garnishment of " '[f]unds or benefits of [an] ... employee benefit plan or program subject to ... [ERISA]'." *Mackey*, 486 U.S. at 828, 108

S.Ct. at 2184. The state supreme court reversed, holding the antigarnishment statute was preempted by ERISA. Petitioners, the plan trustees, appealed to the Supreme Court which affirmed, holding the antigarnishment statute preempted (as it mentioned ERISA plans on its face), but holding the general garnishment statute *not* preempted.

**6.** Plan participants, beneficiaries, trustees, fiduciaries or administrators. *See generally* 29 U.S.C.A. § 1001(b) (statement of purpose); §§ 1021–1031 (imposing disclosure and reporting requirements on plan administrators); § 1104 (imposing a fiduciary duty); § 1132(a)(3) (providing plan participants, beneficiaries, and fiduciaries with a private cause of action).

ERISA's comprehensive regulatory scheme and are not preempted. *Castonguay*, 984 F.2d at 1521–22.[7] *Cf. Mertens v. Hewitt Associates*, 508 U.S. 248, 255 n. 5, 113 S.Ct. 2063, 2067–68 n. 5, 124 L.Ed.2d 161 (1993) (expressing doubt about whether an ERISA entity can state a claim for breach of fiduciary duty against a non-fiduciary who knowingly aids a fiduciary in the breach of the latter's duty) (dictum).[8]

▇▇▇. Gallagher is certainly an ERISA entity. The question remains whether Mass Mutual is an ERISA entity. Section 3 defines a fiduciary[9] as one who

(i) ... exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) ... renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) ... has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C.A. § 1002(21)(A); *Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126, 129 (7th Cir.1992) (discretion is the "*sine qua non* of [ERISA's] fiduciary duty"); *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 534 (7th Cir.1991) (equating discretion with decisionmaking authority). At this stage of the litigation, however, we do not know if Mass Mutual performs any discretionary functions. Count I alleges that Mass Mutual is a fiduciary; counts II through VII allege that Mass Mutual is not. At this juncture Mass Mutual insists it is not a fiduciary. At the

pleading stage, plaintiffs are entitled to state alternative and conflicting causes of action. Fed.R.Civ.Pro. 8(e)(2); *Pedre Co., Inc. v. Robins*, 901 F.Supp. 660, 665–666 (S.D.N.Y. 1995). We therefore leave to a later date the determination of Mass Mutual's status. *Cf. Pappas*, 923 F.2d at 538 ("[T]here is no *pro se* rule" that prevents professionals who render advice to an ERISA plan from becoming fiduciaries.... [T]he question ... involves factual determinations....) (citation omitted). If Mass Mutual is a fiduciary, it will be shielded from these state liability laws; if it is not a fiduciary, it will be shielded from ERISA. *Pedre*, 901 F.Supp. at 666.

### CONCLUSION

For the reasons stated above, defendant's motion to dismiss is denied.

---

7. Other courts have considered a multiple of factors. The Tenth Circuit considers the general applicability of the law, whether it is specifically aimed at ERISA plans, whether it is a traditional area of state regulation, and whether its application would affect the relationship between two ERISA entities. *Airparts Co., Inc. v. Custom Benefit Svcs. of Austin, Inc.*, 28 F.3d 1062, 1065 (10th Cir.1994) ("relating to" factors). The Sixth Circuit considers whether the state law is an exercise of traditional state authority, whether it affects the relationship between two ERISA entities, and whether the state's law has an incidental (merely economic) effect on the ERISA plan. *Redall, supra*, 876 F.Supp. at 150 (citing *Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550,

555–56 (6th Cir.1987); *Saylor v. Parker Seal Co.*, 975 F.2d 252 (6th Cir.1992)).

8. The Seventh Circuit seems to have adopted the *Mertens* dictum as law. *See Reich v. Continental Casualty Co.*, 33 F.3d 754 (7th Cir.1994) ("[The Court] consider[ed] all the relevant considerations and adumbrate[ed] an unmistakable conclusion, [and] it would be reckless [for lower courts] to think the Court likely to adopt a contrary view in the future."), *cert. denied*, — U.S. ——, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995).

9. It is clear that Mass Mutual is not an employer, employee, beneficiary or trustee in this matter.