No. 2--00--0759 

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

ELIZABETH LYSEK, ) Appeal from the Circuit Court

) of Du Page County.

Plaintiff-Appellant, )

) 

v. ) No. 98--L--59

)

ELMHURST DODGE, INC., and )

CHRYSLER CORPORATION, )

)

Defendants-Appellees ) Honorable

) Hollis L. Webster,

(Old Kent Bank, Defendant). ) Judge, Presiding.

_________________________________________________________________

)

PATRICIA KELLY and THOMAS ) Appeal from the Circuit Court

KUZMICKI, ) of Du Page County.

)

Plaintiffs-Appellants, )

)

) No. 99--L--103

)     

HOWARD PONTIAC, INC., and SMART )

CHOICE, ) 

)

Defendants-Appellees )

) Honorable

(First National Bank of ) Hollis L. Webster,

Elmhurst, Defendant). ) Judge, Presiding.

_________________________________________________________________

)

MARTIN CORTEZ, ) Appeal from the Circuit Court

) of Du Page County.

Plaintiff-Appellant, )

)

v. ) No. 99--L--699

)

JERRY BIGGERS CHEVROLET, INC., )

and ITT COMMERCIAL FINANCE )

CORPORATION, )

)

Defendants-Appellees ) Honorable

) Hollis L. Webster,

(First Chicago Bank, Defendant). ) Judge, Presiding.

_________________________________________________________________

Modified Upon Denial of Rehearing

JUSTICE BYRNE delivered the opinion of the court:

This interlocutory appeal arises from three separate lawsuits in the circuit court of Du Page County.  Plaintiffs seek review of orders dismissing claims under the Magnuson-Moss Warranty Federal Trade Commission Improvement Act (the Magnuson-Moss Act) (15 U.S.C.A. §2301 
et seq.
 (West 1998)) for the breach of motor vehicle service contracts.  We reverse the dismissal orders and remand the causes for further proceedings.

The three cases involve similar fact patterns which may be briefly summarized.  In each case, the plaintiff (or plaintiffs) purchased a new or used motor vehicle from a Chicago area dealer along with a service contract under which the dealer and another entity promised to perform specified repair or maintenance services.  After experiencing problems with their vehicles, the plaintiffs filed multiple-count complaints seeking relief under various legal theories.  Each complaint included a single count alleging a breach of the service contract and seeking damages and other relief (including attorney fees) under section 110(d) of the Magnuson-Moss Act (15 U.S.C.A. §2310(d) (West 1998)).  In cause No. 98--L--59, plaintiff, Elizabeth Lysek, sought recovery from defendants, Elmhurst Dodge, Inc. (Elmhurst Dodge), and Chrysler Corporation (Chrysler) for the failure to perform their duties under the service contract she purchased for her 1995 Dodge van.  In cause No. 99--L--103, plaintiffs, Patricia Kelly and Thomas Kuzmicki, sought recovery from defendant Howard Pontiac, Inc. (Howard), and National Warranty Insurance Risk Retention Group (National Warranty) which was misnamed Smart Choice for the breach of duties under the service contract on their 1995 Chevrolet Blazer.  In both cases, the alleged breaches consisted of the failure to satisfactorily repair certain defects in accordance with the terms of the service contract.  In cause No. 99--L--699, plaintiff, Martin Cortez, sought recovery from defendants, Jerry Biggers Chevrolet, Inc. (Biggers), and ITT Commercial Finance Corporation (ITT), alleging that they breached the service contract on his 1994 Oldsmobile Achieva by improperly charging him for engine repairs covered by the contract and refusing to return the vehicle until the charges were paid. 

The trial court dismissed the breach-of-service-contract claims, concluding that the 
Magnuson-Moss Act does not create a statutory cause of action for simple contract claims
.  Pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308), the trial court expressly found that the dismissal orders involved a question of law as to which there is a substantial ground for difference of opinion and that immediate appeals from the orders may materially advance the ultimate termination of the litigation.  The trial court identified the pertinent question of law as follows: "[w]hether the Federal Trade Commission's failure to promulgate rules and regulations for service contracts under the [Magnuson Moss Act] prohibits actions for breach of a service contract thereunder and limits a consumer's remedy for breach of service contract to state law."  In addition, the trial court ordered the cases consolidated for purposes of appeal only.  We allowed plaintiffs' joint application for leave to appeal pursuant to Rule 308.  Plaintiffs have submitted a joint brief on appeal, as have defendants Elmhurst Dodge, Howard, and Biggers (the dealers). Defendant National Warranty has adopted the dealers' appellate brief.  Defendants Chrysler and ITT have filed separate briefs.

The Magnuson-Moss Act was designed to protect consumers from deceptive warranty practices by establishing standards for the form and content of written warranties.  See 
Skelton v. General Motors Corp.
, 660 F.2d 311, 313 (7th Cir. 1981).  The terms "written warranty" and "service contract" are both defined in the statute (15 U.S.C.A. §§2301(6),(8) (West 1998)) and the Federal Trade Commission is empowered to issue rules governing, among other things, the disclosure of the terms and conditions of written warranties and service contracts (15 U.S.C.A. §§2302(a), 2306(a) (West 1998)).  At present, the Federal Trade Commission has not issued any rules governing service contracts.  The statute classifies written warranties as either "full" warranties or "limited" warranties, depending on whether their terms and conditions meet or exceed specified federal minimum standards.  15 U.S.C.A. §§2303, 2304 (West 1998).  A warranty designated a full warranty is deemed to incorporate the federal minimum standards under section 104 of the Magnuson-Moss Act and rules prescribed under that section.  15 U.S.C.A. §2304(e) (West 1998).  Where (1) a written warranty is given or (2) a service contract is entered into at the time of the sale of a product, or 90 days thereafter, implied warranties arising under state law may not be disclaimed, although they may be limited in duration unless a full warranty has been given.  15 U.S.C.A. §§2304(a)(2), 2308 (West 1998).

The United States Attorney General or the Federal Trade Commission may seek injunctive relief in federal court restraining the use of deceptive warranties or other violations of the statute.  15 U.S.C.A. §2310(c) (West 1998).  In addition, the statute permits aggrieved consumers to bring suit in state court.  15 U.S.C.A. §2310(d)(1)(A) (West 1998).  Private lawsuits may also be prosecuted in federal court where a special amount-in-controversy requirement is satisfied.  15 U.S.C.A. §§2310(d)(1)(B),(d)(3) (West 1998).  The court may award attorney fees and expenses to consumers who prevail in Magnuson-Moss Act lawsuits in state or federal court.  15 U.S.C.A. §2310(d)(2) (West 1998).

The issue in this case hinges on the meaning of section 110(d)(1) of the Magnuson-Moss Act, which provides, in pertinent part:

"[A] consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, 
or under a written warranty, implied warranty, or service contract
, may bring suit for damages and other legal and equitable relief--

(A) in any court of competent jurisdiction in any State or the District of Columbia; or 

(B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection."  (Emphasis added.)  15 U.S.C.A. §2310(d)(1) (West 1998).

The trial court apparently concluded that section 110(d) applies only to claims based on violations of specific requirements of the Magnuson-Moss Act or corresponding Federal Trade Commission rules.  The court reasoned that the examination of the Magnuson-Moss Act in its entirety revealed that Congress did not intend to provide consumers of service contracts with a general breach-of-contract remedy.  Plaintiffs argue that the cause of action under section 110(d) is not limited to violations of specific statutory requirements or Federal Trade Commission rules.  The dealers respond that the trial court's interpretation of the scope of section 110(d) is consistent with the overall scheme of the statute, which contains detailed provisions concerning the form and content of warranties but lacks specific requirements applicable to service contracts.  Chrysler points to the statute's legislative history (see H.R. Rep. No. 93-1107 (1974), 
reprinted in
 1974 U.S.C.C.A.N. 7702) and the Federal Trade Commission's interpretations of the statute (see 16 C.F.R. §700.1(a) (2001)) as evidence that Congress was concerned primarily with consumer warranty practices as opposed to practices involving service contracts.  ITT offers no independent analytical defense of the trial court's reasoning; generally speaking, its argument is confined to challenging the applicability of the case law cited by plaintiffs.

Initially, we note that defendants have cited our decisions in 
Nibert v. Al Piemonte Ford Sales, Inc.
, 294 Ill. App. 3d 423 (1998), and 
Saladino v. Team Chevrolet, Inc.
, 242 Ill. App. 3d 735 (1993), for the proposition that no cause of action exists under the Magnuson-Moss Act for breach of a service contract.  We agree with plaintiffs that 
Nibert
 and 
Saladino
 are inapposite.  In both cases we held that summary judgment in favor of the defendants on breach-of-warranty claims was proper where, among other things, the written instruments upon which the plaintiffs based their claims were service contracts rather than warranties.  Both decisions simply stand for the proposition that a breach-of-warranty claim cannot be predicated on a service contract.  Neither case purported to decide the question of whether an action can be maintained under the Magnuson-Moss Act for breach of a service contract.  The narrow holdings in 
Nibert
 and 
Saladino
 do not apply here.

Defendants also rely on 
Priebe v. Autobarn, Ltd.
, 240 F.3d 584 (7th Cir. 2000), for the proposition that a state law cause of action for breach of contract is not cognizable under section 110(d) of the Magnuson-Moss Warranty Act.  In 
Priebe
, unlike in the present case, the defendant was not a party to the service contract.  In addition, Priebe had no breach of contract claim because he had cancelled the service contract.  Because Priebe had no breach of contract claim, the court summarily concluded that section 110(d) of the Magnuson-Moss Act, under which Priebe sued, "[did] not provide an independent basis for liability; it only provide[d] for federal jurisdiction for some state claims, including this breach of contract claim."  
Priebe v. Autobarn, Ltd.
, 240 F.3d at 587.  The court in 
Priebe
 never analyzed whether a state action could be maintained under the Magnuson-Moss Warranty Act for breach of a service contract.  Accordingly, because this case is factually distinguishable, 
Priebe
 does not apply.

Because the issue before us is one of statutory construction, a brief review of the general principles that guide that process may be helpful.  It is firmly established that the primary rule of statutory construction is to give effect to legislative intent by first looking at the plain meaning of the language of the statute.  
Davis v. Toshiba Machine Co., America
, 186 Ill. 2d 181, 184 (1999).  "Where the language of a statute is clear and unambiguous, a court must give it effect as written, without 'reading into it exceptions, limitations or conditions that the legislature did not express.' "  
Garza v. Navistar International Transportation Corp.
, 172 Ill. 2d 373, 378 (1996), quoting 
Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.
, 158 Ill. 2d 76, 83 (1994).  In determining the meaning of the language used, the statute should be construed as a whole, with each provision evaluated in connection with every other section.  
Primeco Personal Communications, L.P. v. Illinois Commerce Comm'n
, 196 Ill. 2d 70, 88 (2001).  Where the statutory language is clear, resort to other tools of interpretation is unnecessary.  
Davis
, 186 Ill. 2d at 185.

The operative statutory language in this case is clear and unambiguous.  The statute plainly states that a suit for damages or other legal or equitable relief may be brought by a consumer who is damaged by "the failure of a supplier, warrantor 
or service contractor
 to comply with 
any obligation
 under this chapter, 
or under a written warranty, implied warranty, or service contract
."  (Emphasis added.)  15 U.S.C.A. §2310(d)(1) (West 1998).  The word "or" is ordinarily understood in its disjunctive sense.  
People v. Frieberg
, 147 Ill. 2d 326, 349 (1992).  Thus, in the emphasized language quoted above, the first instance of the word "or" signifies that obligations under written or implied warranties or service contracts can serve as independent bases for private lawsuits under the Magnuson-Moss Act.  Moreover, the statutory cause of action arises from "any" obligation under a service contract, not just those obligations specifically provided for by the statute or a Federal Trade Commission rule.  The plain language of section 110(d) reflects a legislative intent to provide consumers with a private remedy for breaches of service contracts without respect to the existence or nonexistence of any applicable Federal Trade Commission rules governing service contracts.  

The trial court reasoned that review of the Magnuson-Moss Act in its entirety indicated that Congress did not intend to provide a general statutory contract remedy.  The trial court concluded that the overall scheme of the statute reflects a legislative design to protect consumers by regulating the form and content of written warranties and service contracts and by mandating full and conspicuous disclosure of their terms and conditions.  Accordingly, the trial court reasoned that Congress only intended to afford consumers a cause of action for violations of these particular obligations.  We disagree.  

First and foremost, the trial court's interpretation simply has no basis in the actual language of the statute.  Had Congress intended to limit the scope of consumer actions in the manner the trial court suggests, it could have easily expressed such a limitation in the terms of the statute.  Instead, as previously discussed, Congress defined the cause of action in broad and unqualified language.  The trial court's interpretation would essentially reduce the reference to "service contracts" in section 110(d) to mere surplusage.  Even without that language section 110(d) would embrace the types of cases to which the trial court believes it was designed to apply.  As a general rule, courts should avoid interpretations that treat language as surplusage and should instead attempt to give meaning to all of the words used.  
Bethania Ass'n v. Jackson
, 262 Ill. App. 3d 773, 777 (1994).  

While it is appropriate to consult the statute as a whole in interpreting particular provisions, generally speaking, the justification for doing so is to illuminate the meaning of the language used.  The trial court's analysis departs from this objective.  Rather than viewing the statute as a whole in order to clarify (or confirm) the meaning of particular language, the trial court essentially relied on a holistic examination of the statute as a basis for disregarding statutory language the court viewed as repugnant to (or at least inconsistent with) the general philosophy of the enactment.  In our view, there is a sound policy basis for concluding that Congress designed section 110(d) to provide a broad, practical consumer remedy for violations of the substantive obligations under written warranties and service contracts, thereby complementing the statute's regulatory framework.  Standing alone, form, content, and disclosure requirements might amount to little more than an empty gesture without an effective mechanism through which consumers could enforce their substantive rights under warranties and service contracts.  Recourse under the common law, while available in theory, is often impractical or uneconomical in consumer cases in which the dollar amounts at stake are often small.  Under the common-law "American rule," litigants are generally responsible for their own attorney fees (see, 
e.g.
, 
Toland v. Davis
, 295 Ill. App. 3d 652, 657 (1998)); hence small consumer lawsuits are frequently prohibitively expensive to prosecute.  By providing for an award of attorney fees to prevailing consumers, Congress has made legal recourse practical and accessible in a broad range of consumer disputes.

The trial court's result is also at odds with the way courts treat breach-of-warranty claims.  No one disputes that breach-of-warranty claims (as distinguished from service contract claims) are cognizable under the Magnuson-Moss Act.  This cannot be explained on the basis that, unlike service contracts, written warranties are extensively regulated under the statute and Federal Trade Commission rules.  Courts do not decide breach-of-warranty claims under a specialized body of federal warranty law; rather, such claims are governed by state law.  Accord 
Gardynski-Leschuck v. Ford Motor Co.
, 142 F.3d 955, 956 (7th Cir. 1998) (under the Magnuson-Moss Act, "an aggrieved customer may sue on state-law claims in federal court, whether or not the parties are of diverse citizenship").  We see no reason why Congress would choose to treat service contract claims any differently.  We therefore conclude that a cause of action under state law for the breach of a service contract is cognizable under section 110(d), whether or not the breach offends any particular requirement of the Magnuson-Moss Act or the corresponding Federal Trade Commission rules.

For the foregoing reasons, we reverse the orders of the circuit court of Du Page County dismissing the claims for the breach of the service contracts, and we remand the causes for further proceedings.

Reversed and remanded.

RAPP and CALLUM, JJ., concur.